643 So.2d 767 (1994)
STATE of Louisiana
v.
Samuel FREE.
No. 26267-KA.
Court of Appeal of Louisiana, Second Circuit.
September 21, 1994.
Rehearing Denied October 20, 1994.
*771 Donnie L. Ellerman, Winnsboro, for appellant.
Richard P. Ieyoub, Atty. Gen., Baton Rouge, William R. Coenon, Dist. Atty., Johnny R. Booth, Asst. Dist. Atty., Winnsboro, for appellee.
Before MARVIN, C.J., BROWN, J., and PRICE, J. Pro Tem.
PRICE, Judge Pro Tem.
Following a jury trial, defendant Samuel Free was convicted of six counts of indecent behavior with a juvenile in violation of LSA-R.S. 14:81, and sentenced to six years at hard labor on each count with the sentences to run concurrently. Defendant appeals these convictions and sentences, urging thirteen assignments of error. Finding all assignments without merit, we affirm.

FACTS
C.F., a young girl who was 8 or 9 years old at the time of these offenses, is the daughter of a foster sister of Free. On Friday, February 14, 1992, Free telephoned C.F.'s mother and asked her stop by his office. Free told C.F.'s mother that his son and C.F. were mad at him, and that they had made up a story about Free molesting C.F. Because plans had already been made for C.F. to spend the weekend with out-of-town friends, and C.F. already had a doctor's appointment scheduled for the following Monday morning, C.F.'s mother did not ask C.F. about the allegations at that time.
On Monday morning, C.F.'s mother asked her about the allegations. C.F. replied that "Uncle Buddy" (Free) had taken naked pictures of her and fondled her genitals with his fingers. Because C.F. was crying as she related this information, her mother could discern no details. C.F.'s mother contacted Dr. Ford, a child counselor in Winnsboro. After interviewing C.F., Dr. Ford concluded the child's story was truthful. During the scheduled doctor's appointment, C.F. was examined for evidence of penetration. After the appointment, C.F.'s mother contacted the Franklin Parish Sheriff's Department.
Later that same afternoon, Free delivered several photographs to Eugene Parker, the Franklin Parish sheriff. Free presented this collection of photographs as representative of the type of photos described by C.F.
C.F. was interviewed on Wednesday, February 19, 1992, by Deputy Rhonda Magee. During this interview, C.F. disclosed that Free had taken pictures of her in various states of undress, that he had touched her genitals on several occasions, and that she had touched his genitals. C.F. also told Deputy Magee that Free had another 9-year-old girl, J.J., take a picture of C.F. and Free with their pants pulled down, and that Free exposed both girls to magazines with *772 photos of naked women. These incidents allegedly occurred at Free's residence, a building or office behind Free's residence, and two different offices in Winnsboro used in Free's appraisal business. J.J.'s statements to Deputy Magee in a separate interview corroborated those of C.F.
Following a trial on the merits in which the jury heard evidence of prior crimes approved at a Prieur hearing, Free was convicted on all six counts. After a presentence investigation, Free was sentenced to six years at hard labor on each count, with the sentences to run concurrently.
Free urges thirteen assignments of error, each of which we discuss below.

Error No. 1: Evidence of Prior Crimes
Free first assigns as error the trial court's decision to allow testimony regarding prior crimes and offenses. Four days before the jury trial was scheduled to begin, the state filed a Prieur notice of intent to use evidence of other crimes and conduct to show knowledge, system, motive, plan, intent, identity and scheme. Free asserts the trial court erred in allowing the testimony of T.L. regarding prior similar criminal conduct as well as testimony of conduct involving B.W., who was not available to testify. T.L. is the 17-year-old biological daughter of Free's sister. The child had been adopted by another family in the local area who were also friends with Free.
T.L. testified that when she was between the ages of 9 and 11, Free touched her genitals on one occasion as well as took photographs of her and her friend, B.W., who is the same age as T.L. She also testified that Free gave the girls a copy of "Playboy" magazine to look at, and that she saw Free take photos of B.W. in various stages of undress.
For evidence of other crimes to be admissible, the state must comply with the notice requirements and limiting instructions set out in Prieur, prove with clear and convincing evidence that the other acts or crimes occurred and were committed by the defendant, demonstrate that the other acts satisfy one of the requirements listed in LSA-C.E. Art. 404 B(1), and finally, show that the probative value of the evidence outweighs its prejudicial effect. State v. Jackson, 625 So.2d 146 (La.1993); State v. Prieur, 277 So.2d 126 (La.1973).
Generally, evidence of other sex crimes committed by the defendant against a similarly situated victim falls into one of the 404 B exceptions. Particularly, where the testimony shows the factual circumstances of the prior acts and the crime charged are virtually identical, the evidence of other crimes is corroborative of the victims' testimony and establishes a system or plan. State v. Tolliver, 621 So.2d 17 (La.App. 2d Cir.1993).
Upon request by defense counsel, the court instructed the jury as to the limited purpose of T.L.'s testimony. Free does not contend the state failed to meet its burden of proving the other crimes by clear and convincing evidence.
However, Free contends the state did not give notice of intent to use evidence of other crimes within a reasonable time. The record reveals the state filed the notice and delivered it to Free's counsel on the same day the witness came forward. Free's counsel interviewed the witness, T.L., on the following day (Friday). The trial began on Monday.
Under the circumstances, the state gave pre-trial notice which was as reasonable as practicable. There was no prejudicial surprise because Free's counsel had an opportunity to interview the witness before trial.
Free also argues he was denied the right to confront and cross-examine B.W. or to determine if the allegations made by T.L. about conduct between Free and B.W. were truthful. This contention has no merit. T.L. testified only to what Free had either done to her or in her presence; she did not testify as to what might have occurred to B.W. out of her observation or knowledge.
The evidence of prior, similar (virtually identical) sex crimes, as presented by the testimony of T.L., is clearly admissible evidence. See Jackson, supra, expressly holding that evidence of prior similar sex crimes is admissible, but evidence of dissimilar *773 criminal behavior or sex crimes is not admissible. In Jackson, the defendant was convicted of molestation of juveniles, of which indecent behavior with juveniles is a lesser included offense. State v. LeBlanc, 506 So.2d 1197 (La.1987).

Error No. 2: Motion for Continuance
Free urges the trial court erred in not granting his motion for a continuance after the court ruled that the prior similar criminal conduct testimony of T.L. was admissible. The state became aware of the prior similar experience of T.L. on the Thursday before the trial began on Monday. The state informed Free's attorney on the same day. Free's attorney interviewed T.L. on the Friday before trial. The admissibility of T.L.'s testimony was ruled on in a pre-trial hearing before the trial began.
The trial court did not abuse its discretion in its denial of the motion for continuance, nor did Free suffer prejudice as a result. See LSA-C.Cr.P. Art. 712; and State v. Knighton, 436 So.2d 1141 (La.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984). Free was already aware of the substance of this witness's testimony. We cannot say it was error for the trial court to deny the motion to continue.

Error No. 3: Motion to Quash Because the Statute is Unconstitutionally Vague
Free asserts that the terms "lewd and lascivious" in the statute are vague and ambiguous, in violation of the due process clause of the federal Constitution. Free states in brief, "the state offered as lewd conduct, having `Playboy' magazines in the defendant's home, and pictures of young girls in bathing suits.... Carried to their logical extreme, photographs of babies on bearskin rugs could result in a parent's incarceration."
Free's argument fails because it takes the requisite conduct out of context. The statute does not make the simple act of possessing "Playboy" magazines or pictures of young girls in bathing suits criminal, absent certain age requirements, and the specific intent to arouse or gratify the sexual desires of either person.
Free's argument has been addressed by the Louisiana Supreme Court, which held that the terms "lewd and lascivious" are not unconstitutionally vague, ambiguous or indefinite.
The words `lewd' and `lascivious' found in the statute are not vague and indefinite. On the contrary, they have a well defined, well understood, and generally accepted meaning, and by their use, an accused is informed of the nature of the act he is alleged to have committed. The word `lewd' means lustful, indecent, lascivious, and signifies that form of immorality which has relation to sexual impurity or incontinence carried on in a wanton manner. The word `lascivious' means tending to excite lust, lewd, indecent, obscene, relating to sexual impurity, tending to deprave the morals in respect to sexual relations. See Black's Law Dictionary (DeLuxe Ed.). Moreover, we are entitled to study these words in their context, and when we do this, there can be no possible doubt as to their import here. These words are used in the statute to describe an act done `with the intention of arousing or gratifying the sexual desires.'
State v. Holstead, 354 So.2d 493, 497 (La. 1977), quoting from State v. Prejean, 216 La. 1072, 45 So.2d 627, 629 (1950).
Likewise in State v. Milford, 225 La. 611, 73 So.2d 778 (1954), and State v. Saibold, 213 La. 415, 34 So.2d 909 (1948), LSA-R.S. 14:81 was held to be certain and definite enough to withstand constitutional attack on the basis of vagueness. In Saibold, the court explained that when the term `lewd' is associated with the word `lascivious' it connotes actions or gestures of a lustful or lecherous nature. Moreover, the necessity that the act be committed with the intent of arousing sexual desires gives to the words an even more confined meaning. Therefore, LSA-R.S. 14:81 adequately informs a defendant of the nature and cause of the charge against him, and is thus, not constitutionally infirm.
Holstead, supra, at 498.
Thus the charging statute is not unconstitutionally vague.

*774 Error No. 4: Motion to Quash Because of the Insufficiency of the Allegations

Free correctly argues that, according to the jurisprudence, the amended indictment is fatally defective. State v. Hebert, 205 La. 110, 17 So.2d 3 (1944); Prejean, supra; State v. Edwards, 283 So.2d 231 (La.1973); State v. Terregano, 336 So.2d 859 (La.1976). However, considering the underlying facts peculiar to the instant case, the defendant has not suffered the prejudice that the holding of Hebert and its progeny was designed to overcome.
The amended indictment filed against Free tracks the language of the statute and identically charges each of the six counts as follows:
Between May, 1991 and February 29, 1992, [the defendant] did willfully and unlawfully violate the provisions of LSA-R.S. 14:81, relative to indecent behavior with juveniles in that he being over the age of seventeen, committed a lewd or lascivious act upon the person or in the presence of [the victim], a child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person.
(Our emphasis.)
The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. LSA-C.Cr.P. Art. 464; Edwards, supra. The charged offense may be committed in two distinct ways: (1) by the commission of a lewd or lascivious act upon the person; or (2) by the commission of a lewd or lascivious act in the presence of any child under the age of seventeen, with the requisite intent. LSA-R.S. 14:81. An indictment for indecent behavior with juveniles must inform the accused in which way he is charged with having committed the offense, whether upon the person or in the presence of the person. Otherwise, the defendant would go into court without any knowledge, insofar as the disclosures in the indictment are concerned, of the kind or nature of acts intended be relied on as constituting the offense charged. Hebert, supra; Edwards, supra.
An indictment which charges indecent behavior with juveniles in the alternative language of the statute does not adequately inform an accused of the nature and cause of the accusations against him. Hebert, supra; Prejean, supra; Edwards, supra. Such an indictment is fatally defective and should be quashed. Hebert, supra; Edwards, supra. A deficiency of this sort may be cured by a response to a motion for a bill of particulars. State v. Gainey, 376 So.2d 1240 (La.1979).
However, in the instant case, the original indictment for molestation of juveniles included specific factual allegations of sexual misconduct. The elements of the lesser offense of indecent behavior with juveniles mirror the elements of molestation of juveniles, except that lesser offense deletes the additional criminal element of:
by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile.
LSA-R.S. 14:81.2. According to the state's argument during the hearing on the motion to quash, the amended indictment not only removed the additional elements from the charged offenses, but also charged the defendant with additional criminal conduct:
All of [the specific factual allegations] were deleted. However, the conduct to be proved at trial is the same as previously alleged, in addition to other acts which we believe are lewd and lascivious. This is merely a short form indictment. The evidence is the same as it always has been. And I think the original indictment on the molestation counts certainly inform the defendant of the nature of the proof to be made at trial. We are not saying, by amending the indictment that he did not do these things. In fact, the evidence will be that he did commit these various acts, in addition to other conduct which may or may not [comprise] the crime of indecent behavior.
The crime of indecent behavior with juveniles cannot be charged in the short *775 form. However, by virtue of open file discovery, the defendant was aware of all the evidence the state had at its disposal in this prosecution. He was not only aware of the nature and cause of the accusation against him so that he could prepare his defense, but he had also been fully informed of the nature of the evidence by which the state expected to prove the charges. See Prejean, supra, at 630. By the comments in the record, the state admitted that the amended indictment charged the defendant with any and all allegations of sexual misconduct with the two specified victims during the identified period. Therefore, the defendant may plead these convictions as a bar to any subsequent prosecution for alleged misconduct with either of the victims during the identified time period. Prejean, supra, at 632; Terregano, supra, at 861.
Article 1, § 13, La. Const.1974, requires only that the accused be informed of the nature and cause of the accusation against him. The constitutional provision that a defendant be informed of the nature and cause of the accusation is not to be restricted to mean that he must be so informed by indictment. Gainey, supra, at 1242 (emphasis in original). If the indictment sufficiently identifies the conduct charged and the statute violated, a motion to quash will not be sustained. Gainey, supra, at 1244. The deficiency in the bill of information in Gainey was cured by the response to the motion for a bill of particulars.
Under the particular circumstances of the instant case, the defendant had full knowledge not only of the nature and cause of the charges against him, but also of the nature and extent of the evidence prior to the amendment of the indictment. Cf. Prejean, supra, at 632; Gainey, supra, at 1240-2.
Free also argues that the jury was instructed in the same language used in the amended indictment. However, this is not assigned as error, nor was it raised in a contemporaneous objection. This argument is not properly before the court. La.C.Cr.P. 841 A.

Error No. 5: Motion for Bill of Particulars
On the morning of the trial, Free filed a motion for a bill of particulars, which was denied after a pre-trial hearing. The reason stated by the trial court for denying the motion was that open file discovery gave Free full knowledge of the nature and extent of the evidence. Free urges this refusal was error.
As discussed above, the amended indictment was technically defective because it alleged the violation of LSA-R.S. 14:81 in the alternative. The proper remedy for an indictment which fails to set forth the essential facts of the charged offense is a request for a bill of particulars rather than a motion to quash. Gainey, supra. Accordingly, the trial court should have granted the request for a bill of particulars to specify whether the alleged offenses were committed upon the person or in the presence of the victims.
However, we have already ruled that under the circumstances of this case the amended indictment adequately set forth the essential facts of the charged offenses. Thus, there was no reversible error in the trial court's denial of the request for a bill of particulars.

Error No. 6: Hearsay Testimony of Deputy Rhonda Magee
C.F.'s mother first asked the child about the allegations on the morning of Monday, February 17, 1992. The child and her mother did not discuss the details at that time. C.F.'s mother contacted a child counselor in Winnsboro. After interviewing C.F., the counselor opined the child's story was truthful. Her mother then took C.F. to a previously scheduled physician's appointment during which C.F. was examined for evidence of penetration. Later that same day, C.F.'s mother contacted the Franklin Parish Sheriff's Department.
Deputy Rhonda Magee interviewed both victims, C.F. and J.J., separately on Wednesday afternoon, February 19, 1992, two days after the initial complaint. Deputy Magee was the fourth adult with the opportunity to hear or to consider C.F.'s complaint, following C.F.'s mother, Dr. Ford with the mental *776 health clinic, and Dr. Busby, the physician. Deputy Magee's testimony was presented before the testimony of either of the victims. Free assigns as error the trial court's admission of Deputy Magee's testimony regarding what the victims told her, calling it hearsay.
The Louisiana Supreme Court has long recognized that the original complaint of sexual abuse by a young child is admissible when the particular facts and circumstances indicate the complaint was the product of a shocking episode and not a fabrication. State v. Pace, 301 So.2d 323 (La.1974). The original complaint of a young child is the statement made at the first reasonable opportunity under the particular facts and circumstances of the case. State v. Prestridge, 399 So.2d 564, 572 (La.1981).
A statement concerning the initial complaint of sexually assaultive behavior which is consistent with the declarant's testimony is not hearsay. LCE 801 D(1)(d). This "first opportunity" has been consistently interpreted as the first opportunity the child has to speak with a friendly adult. Prestridge, supra; State v. Noble, 342 So.2d 170 (La.1977). A young child abused by an adult in the position of a parent, family member, caretaker or friend cannot be expected to come forward immediately with a complete and exact report of the event. The courts have recognized that the child may be unable to speak about the incident until she considers herself safely in the presence of a compassionate adult whom she can trust. Because the child may not have a clear understanding of what has been done to her, her "original complaint" often consists of responses to the questioning of a patient, persistent adult who draws the child's story from her. State v. Garay, 453 So.2d 1003 (La.App. 4th Cir.1984).
In State v. Anderson, 526 So.2d 499 (La. App. 1st Cir.1988), writ denied, 537 So.2d 1160 (La.1989), which is similar to the case at bar, the child reported the case to her father on Saturday, but her father did not discuss the details of the complaint. He took the child victim to the police on the following Monday or Tuesday, where the victim then spoke to a female officer, in her father's presence, relating the details of the offense to the officer. Anderson, supra, at 501.
Free asserts the initial report was made to C.F.'s mother. However, C.F.'s mother could discern no particulars because of her daughter's crying and inability to communicate at that time. Thus the report to C.F.'s mother is not the initial report within the meaning of LCE 801 D(1)(d) and the jurisprudence.
Contrary to the state's assertion, the statements are not nonhearsay under LCE 801 D(4), formerly known as the "res gestae" exception to the hearsay rule. The language used by the legislature in the new Code of Evidence is much more narrow than the old rule, and does not extend to "words of the participants when narrating the events." LCE 801 D(4).
However, there are no details concerning what C.F. told the child counselor or her physician. We can find no abuse of the trial court's discretion in overruling the hearsay objection on this record. Even if there were such an abuse, Free's counsel waived any objection to the testimony concerning what the victims said to Deputy Magee when he had her read her notes of these interviews into the record on cross-examination.

Error No. 7: Evidence of Furnishing Alcohol and Tobacco to the Victims
The defendant did not brief or argue this assignment of error. Assignments of error which are neither briefed nor argued are considered abandoned. State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989).

Error No. 8: Cross-Examination of Deputy About Her Status as Abuse Victim
Free urges the trial court erred by not allowing defense counsel to cross-examine Deputy Magee about her admitted history as a victim of sexual abuse in an effort to establish a bias of the deputy against all child abusers.
For evidence of bias of a witness to be admissible or exposed on cross-examination, *777 the bias in question must be direct or personal against the defendant, rather than indirect or general in nature. General prejudices or special biases or interests too irrelevant to or too remote to the issues of the case at trial are considered improper for impeachment purposes. State v. Robbins, 337 So.2d 1168 (La.1976); State v. Billiot, 521 So.2d 763 (La.App. 2d Cir.1988).
The jury heard Deputy Magee testify that she had been a victim of child abuse. That testimony was sufficient to alert the jurors about her possible bias with respect to this defendant. Any further questioning would have been irrelevant unless it concerned a prejudice specific to Free.
No evidence was presented or foundation laid to suggest that Deputy Magee had been abused by Free, or that she had any other reason to have a direct bias against him. The details of her abuse as a child are not relevant to the subject matter of this case, nor do they go any further in establishing bias against this defendant. The trial court did not err in refusing to permit defense counsel to pursue this line of questioning further.

Error No. 9: Cross-Examination About Each Count of Amended Indictment
Defense counsel sought to elicit the specifics of each count of the amended indictment from Deputy Magee on recross-examination. The trial court sustained the state's objection, ruling the questioning was improper because it was beyond the scope of the prosecution's redirect examination.
When the court has allowed a party to bring out a new matter on redirect, the other parties shall be provided an opportunity to recross on such new matters only. LSA-C.E. Art. 611 D. The trial court has discretion to curtail recross-examination as to aspects of the case not covered by the redirect examination. State v. Milby, 345 So.2d 18 (La.1977). There was no error in the trial court's refusal to allow this recross-examination.

Error No. 10: Special Jury Instruction for Lewd and Lascivious Conduct
The defendant argues the trial court erred in granting the state's request for a special jury instruction defining "lewd and lascivious", thus carrying "forward the very essence of ambiguity that the state fostered in the trial of this case."
A requested special charge for the jury shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. LSA-C.Cr.P. Art. 807. The challenged charge stated:
For the purposes of [LSA-R.S. 14:81], a lewd or lascivious act is defined as an act which tends to excite lust and to deprave the morals with respect to sexual relations and which is obscene, indecent and related to sexual impurity.
This definition is consistent with the definition of "lewd and lascivious" found in Holstead, supra and Prejean, supra, holding that the terms are not vague and indefinite. The trial court committed no error in giving the requested instruction.

Error No. 11: Excessive Sentence and Nonconformity with the Guidelines
Free was sentenced to six years at hard labor for each count of indecent behavior with juveniles. The sentences were ordered to run concurrently. Before the close of the sentencing hearing, the defendant made an oral motion to reconsider without stating any grounds for reconsideration. The motion was denied. On appeal, the defendant argues the sentence is unconstitutionally excessive and fails to conform with the Louisiana Sentencing Guidelines.
A motion to reconsider sentence shall set forth the specific grounds on which the motion is based. LSA-C.Cr.P. Art. 881.1 A(2). Failure to include a specific ground on which the motion to reconsider sentence may be based shall preclude the defendant from raising an objection to the sentence on appeal or review. LSA-C.Cr.P. Art. 881.1 D. Free is relegated to having this court review his sentence based only on the bare claim of excessiveness. State v. Mims, 619 So.2d 1059 (La.1993).
*778 LSA-Const. Art. 1, § 20, prohibits the imposition of excessive punishment. A sentence violates this provision if it is grossly out of proportion to the seriousness of the offense or is nothing more than the purposeless and needless infliction of pain and suffering. State v. Lobato, 603 So.2d 739 (La.1992); State v. Bonnano, 384 So.2d 355 (La.1980); State v. Eason, 624 So.2d 935 (La.App. 2d Cir.1993). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Lobato, supra; State v. Hogan, 480 So.2d 288 (La.1985); Eason, supra. The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. Lobato, supra; State v. Square, 433 So.2d 104 (La.1983); Eason, supra. We cannot say the sentence is excessive.

Error No. 12: Sufficiency of the Evidence
In this assignment, Free argues the evidence was not sufficient to convict him and that the prosecution failed to sustain its burden of proof.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the trial court's finding of guilt can only be overturned when the appellate court, viewing the evidence in the light most favorable to the prosecution, finds that no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La. App. 2d Cir.1992).
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. LSA-La. Const. Art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or to reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (1987).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Carey, et al., 628 So.2d 27 (La.App. 2d Cir.1993); State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992); State v. Emerick, 499 So.2d 195 (La.App. 2d Cir.1986); State v. Garlepied, 454 So.2d 1147 (La.App. 4th Cir.1984), writ denied, 462 So.2d 189 (La.1984). The testimony of both victims included details corresponding to the factual allegations of the original indictment.
In order to convict a defendant of indecent behavior with a juvenile, the state must prove that the defendant: (1) committed a lewd or lascivious act upon the person or in the presence of any child under the age of seventeen; (2) was over the age of seventeen and was more than two years older than the victim; and (3) had the specific intent to arouse or gratify either the child's sexual desires or his own. LSA-R.S. 14:81; Edwards, supra; State v. Stamper, 615 So.2d 1359 (La.App. 2d Cir.1993), writ granted and sentences ordered to be served concurrently, 624 So.2d 1208 (La.1993).
The defendant does not argue in brief that the state failed to prove any specific element beyond a reasonable doubt. Rather, the defendant argues that the proof offered by the state consisted of the testimony of two young girls which was inconsistent, and that the other testimony offered merely reiterated what the children had said.
This court must not substitute its opinion of the facts for that of the jury. It is the province of the jury to resolve conflicting inferences from the evidence. Thus, upon review we must consider all the evidence in the light most advantageous to maintaining the verdict. This is true because a reversal of a jury's verdict based on insufficient evidence results in the acquittal of the accused. To reverse on insufficiency, we must find that no valid line of reasoning or permissible inferences from the evidence supports the verdict. This court has further held that, in the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of *779 fact, is sufficient support for a finding of guilt. Stamper, supra, at 1361-2; Braswell, supra; Emerick, supra.
The evidence against Free, taken in its entirety, is sufficient to prove the elements of six counts of indecent behavior with a juvenile beyond a reasonable doubt, expressly relying on the factual basis of Counts 1 through 4, and Count 6 of the original amended indictment. Although inconsistency in C.F.'s testimony compared to her initial report to Deputy Magee leaves a reasonable doubt as to whether the defendant masturbated in C.F.'s presence as originally charged in Count 5, there was sufficient testimony of other acts to sustain the additional count of indecent behavior with juveniles, such as taking photographs of C.F. in various stages of undress.

Error No. 13: Error Patent Review
Free's final assignment was a request for this court to review the record for errors patent. This request is unnecessary, since such a review is made automatically in all criminal cases. Stamper, supra. Examination of the record has revealed no error patent. LSA-C.Cr.P. Art. 920(2).

DECREE
Having found no merit in any of defendant's arguments, at appellant's cost the conviction and sentence are
AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON and BROWN, JJ., and PRICE and JONES, JJ. Pro Tem.
Rehearing denied.